UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

BRITTANY M. JURJ, an Idaho
resident,

               Plaintiff,                     Case No. 3:21-cv-00088-YY

      v.                                 OPINION AND ORDER

SANDRA G. ANDERSEN, an Oregon
resident,

               Defendant.

Plaintiff Brittany Jurj alleges that she and defendant Sandra Andersen had an agreement whereby defendant would pay plaintiff $10 million for plaintiff's shares in a closely-held real estate development and property management business that was founded in part by plaintiff's paternal grandfather Andy Andersen, who passed away in 2008. *See* First Am. Compl. ¶¶ 6, 14–18, ECF 28. The purported agreement was related to a 2019 state lawsuit that plaintiff and defendant, who was Andy Andersen's second wife and at the time was a controlling shareholder in the company, jointly initiated against other family members regarding a dispute over a different family business. *Id.* ¶¶ 9–17. During the prosecution of that 2019 lawsuit, an apparent conflict of interest arose between plaintiff and defendant in their joint representation by lawyers at Perkins Coie LLP, and there was some discussion between plaintiff and defendant about a buyout of plaintiff's shares as a way to resolve the conflict. *Id.* ¶¶ 12–14. Both plaintiff's husband, Octavian Jurj, and defendant's current husband, Bob Albers, were substantially

involved in the 2019 state litigation, and plaintiff alleges that they each were acting as an agent for plaintiff and defendant respectively in that litigation. *Id.* ¶¶ 14–17; *see also* Stanford Decl., Ex. 2 at 1, ECF 139-2 (letter from Perkins Coie analyzing whether communications between the lawyers and the husbands were protected by attorney-client privilege). According to plaintiff, she and defendant entered into an agreement for the $10 million buyout that was to close within five days after the 2019 state litigation was resolved; when the state lawsuit settled in December of 2020, plaintiff demanded payment from defendant under their purported agreement. *Id.* ¶¶ 18–21. Defendant denied they had reached any such agreement and refused to pay. *Id.* ¶ 22. This lawsuit followed.

Both parties agree that defendant is currently incompetent to defend against plaintiff's claims or pursue the counterclaims that defendant has asserted. They disagree, however, about how to proceed. On February 15, 2022, defendant executed a Durable Power of Attorney ("DPA") that empowered Albers to make decisions on her behalf. *See* Heekin Decl., Dep. Ex. 4, ECF 121-5. Defense counsel proposes that Albers is an appropriate representative for defendant because he is already serving that role in this suit, just as he did for the 2019 state litigation, and because several people who are close to defendant, including her brother, a friend, her doctor, her bookkeeper, and lawyers, all believe he is the best person to represent defendant's interests. *See* Cross-Mot. Appoint. 4–5, ECF 132. Plaintiff objects to Albers because she contends that defendant lacked capacity to sign the DPA and because, according to plaintiff, Albers has not been acting in defendant's best interests, in part because of how Albers has been directing this litigation and because he delayed in disclosing to defendant's attorneys the nature of defendant's declining health and capacity. Mot. Substitute 22–28, ECF 120.

Currently pending is plaintiff's Motion to Substitute Real Party in Interest and Appoint a Guardian Ad Litem for Defendant Andersen. ECF 120. Plaintiff asks the court to appoint a "professional guardian ad litem as defendant's representative as necessary to satisfy the requirements of Rules 17 and 25." Mot. Substitute 30, ECF 120. Also pending is a Cross-Motion to Appoint M. Robert Albers as Guardian Ad Litem for Defendant Sandra Andersen. ECF 132. The cross-motion argues that it is not necessary to "appoint a guardian ad litem for [defendant] because she is adequately represented under Rule 17(c) by her counsel and [Albers], the representative she chose years before her capacity was in question," but alternatively asserts that "if the Court is inclined to appoint a guardian ad litem," it should "exercise its discretion to appoint [Albers] as [defendant's] guardian ad litem and next friend in this action." Cross-Mot. Appoint 5–6, ECF 132. Plaintiff has also filed two other motions seeking to strike various portions of the declarations and exhibits filed in response to plaintiff's motion and in support of the cross-motion. *See* ECF 147, 150.

Federal Rule of Civil Procedure 25 provides that "[i]f a party becomes incompetent, the court may, on motion, permit the action to be continued by or against the party's representative." Fed. R. Civ. P. 25(b). Rule 17(c) provides, in relevant part:

> (c) Minor or Incompetent Person.
>
> > (1) *With a Representative*. The following representatives may sue or defend on behalf of a minor or an incompetent person:
> >
> > > (A) a general guardian;
> > >
> > > (B) a committee;
> > >
> > > (C) a conservator; or
> > >
> > > (D) a like fiduciary.

> (2) *Without a Representative.* A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem--or issue another appropriate order--to protect a minor or incompetent person who is unrepresented in an action.

Rule 17(c) "requires a court to take whatever measures it deems proper to protect an incompetent person during litigation. Although the court has broad discretion and need not appoint a guardian ad litem if it determines the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected." *United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.*, 795 F.2d 796, 805 (9th Cir. 1986).

For purposes of Rule 17(c)(1), it is undisputed that Albers has not been appointed as defendant's general guardian or conservator, and that defendant is not represented by a committee. A power of attorney is seemingly one way to establish that a person is a "like fiduciary" under subsection (c)(1)(D). As mentioned above, defendant executed a DPA on February 15, 2022. Plaintiff disputes the validity of the DPA based on, among other things, information contained in defendant's medical records that may call into question whether plaintiff had the necessary capacity to execute it. But even assuming, without deciding, that there is some problem with the DPA, the court nevertheless has discretion to appoint Albers under Rule 17(c)(2), which allows the court to appoint a guardian ad litem where the incompetent person is without representation.[1]

Plaintiff opposes Albers' appointment as guardian ad litem on several grounds. First, plaintiff asserts that the February 2022 DPA is void and was the result of undue influence. Mot.

---

[1] At the hearing, plaintiff asked for an opportunity to be further heard on the issue of whether Albers can be appointed as a "next friend." It is unnecessary to decide that issue because Albers can be appointed as a guardian ad litem.

Substitute 22–25, ECF 120. Further, plaintiff asserts that Albers' conduct in directing the litigation to this point has not been in defendant's best interest because Albers delayed disclosing defendant's declining health to her lawyers, and has indicated that he supports the counterclaims that defendant has asserted, which plaintiff contends are frivolous. Also, plaintiff argues that defendant's overall position in this case—i.e., her denial that she ever agreed to pay $10 million for plaintiff's shares in the family company—is inconsistent with representations Albers made to plaintiff during the 2019 state litigation. *Id.* at 26–29.

However, the substantial weight of the evidence supports appointing Albers as guardian ad litem for defendant in this litigation. Albers served as defendant's representative in the 2019 state litigation and has performed a similar role in this case from its inception. *See* First Am. Compl. ¶¶ 17, ECF 28; Stanford Decl., Ex. 2 at 1, ECF 139-2; Sortun Decl. ¶ 4, ECF 133.[2] The record contains declarations from people close to defendant, including her biological brother, a friend, her doctor, and her long-time bookkeeper, who have observed defendant's relationship with Albers over the years. Universally, these people attest that in their opinions, Albers is the appropriate person to represent defendant's interests in this case. *See* O'Day Decl. ¶ 10, ECF 136; Nopp Decl. ¶ 10, ECF 137; Hodges Decl. ¶ 4, ECF 135; Narlock Decl. ¶ 8, ECF 140.[3]

---

[2] Plaintiff moves to strike the portion of Sortun's declaration in which she attests that defendant appointed Albers to be her agent in the litigation on grounds it is hearsay. Mot. Strike Declarations 4–5, ECF 150. But Sortun's statements can be fairly read to be based on personal knowledge from her observations regarding Alber's authority to act on defendnat's behalf for purposes of directing the case.

[3] Plaintiff's motion to strike portions of the declarations from Michael O'Day, defendant's brother, and Patty Nopp, one of defendant's long-time friends, on the basis of inadmissible hearsay or improper lay opinion is also denied. Both O'Day and Nopp offer admissible testimony based on their firsthand observations of the relationship and interactions between defendant and Albers over the course of many years, and both unequivocally attest to Albers' ability to adequately protect defendant's interest in this suit. The court has considered the other arguments in plaintiff's motions to strike and determined that they either lack merit or are moot

Defendant's brother attests that Albers' is doing an "incredible job" taking care of defendant. O'Day Decl. ¶ 5, ECF 136; *see also* Nopp Decl. ¶ 7, ECF 137 ("Mr. Albers is taking good care of [defendant]."). Additionally, Albers is equipped with the financial experience and acumen to make decisions for defendant in a complex multi-million dollar lawsuit, having served as chief executive officer and on the boards of large corporations for decades.

Also, Albers' assistance in the litigation has not been inconsistent with defendant's best interests. The counterclaims—one for quantum meruit or unjust enrichment based on the attorney's fees that defendant paid Perkins Coie during the 2019 state litigation, and one for declaratory relief that any buyout agreement that exists is unenforceable because of elder financial abuse—are not frivolous on their face and are consistent with the types of claims a competent lawyer would propose (and any adequate representative would consider pursuing) in a case of this nature. Nor is it inconsistent with defendant's best interest for Albers to deny that defendant ever agreed to pay plaintiff $10 million as part of their purported agreement, notwithstanding what plaintiff might believe was the subject of conversations between her, her husband, and Albers during the 2019 state litigation regarding the buyout.

The court chooses not to deviate from the numerous recommendations of plaintiff's family, friends, and caregivers that Albers is an appropriate guardian for defendant on the basis that, with the benefit of hindsight, he should have more quickly informed defendant's legal team ████████████████████████████████. The contemporaneous records from defendant's physician reflect that, as one might expect, ███████████████████████████████ ███████████████. Heekin Decl., Dep. Ex. 66 at 3, ECF 121-11; *id.*, Dep. Ex. 68 at 2, ECF

---

because the court does not rely on the portions of the declarations or exhibits to which plaintiff objects.

121-13. And while it is true that ████████████████████████████████████████

████████████████████████████████████, and the DPA was signed two weeks after

Albers ██████████████████████████████████████, there is no other evidence of

suspicious circumstances surrounding the execution of the DPA, or evidence that Albers has

engaged in any conduct after the DPA was signed that calls into question his loyalty to defendant

or his ability to adequately represent her interests in this case. The record reflects that the DPA

was prepared in the context of estate planning, not litigation, purposes. Moreover, although

Albers could have done so, he has never given himself or his children any of defendant's assets

pursuant to the authority he has under the DPA. Albers Decl. ¶ 4, ECF 134.

The cross-motion argues that it is unnecessary to appoint a guardian ad litem because

Albers is already acting in defendant's interests. However, the court has broad discretion under

these circumstances and is legally obligated to consider whether an incompetent person is

adequately protected. *30.64 Acres of Land*, 795 F.2d at 805. Also, plaintiff has moved for this

action to proceed against defendant's representative pursuant to Rule 25. Thus, considering the

nature and extent of defendant's incompetency and the complexity of the litigation, the court

exercises its discretion to appoint a guardian ad litem, and appoints Albers as guardian ad litem

pursuant to Rule 17(c)(2). At the hearing on the motions, defense counsel indicated that if the

court found it appropriate to appoint Albers as guardian ad litem, they did not object for this

action to continue with Albers in that capacity under Rule 25; therefore, this matter shall proceed

by and against defendant "M. Robert Albers, as guardian ad litem for Sandra Andersen."

## ORDER

For the reasons discussed above, Plaintiff's Motion to Substitute Real Party in Interest

and Appoint a Guardian Ad Litem for Defendant Sandra Andersen [120] is granted in part and

denied in part. Defendant's Cross-Motion to Appoint M. Robert Albers as Guardian Ad Litem for Defendant Sandra Andersen [132] is also granted in part and denied in part. The court appoints M. Robert Albers as guardian ad litem for defendant in this case, and pursuant to Rule 25, this matter shall proceed by and against defendant "M. Robert Albers, as guardian ad litem for Sandra Andersen." Plaintiff's Motion to Strike Exhibits 3, 4, and 5 Submitted with the Declaration of Darian Stanford – ECF 139 [147] and plaintiff's Motion to Strike Parts of the Declarations Submitted in support of Defendant's Cross-Motion to Appoint M. Robert Albers as Guardian Ad Litem for Defendant [150] are denied.

IT IS SO ORDERED.

DATED March 22, 2024.

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge